IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KENNETH BUTLER,

    Petitioner

v.

WILLIAM SCISM,

    Respondent

CIVIL NO. 4:09-CV-2224

Hon. John E. Jones III

## **MEMORANDUM**

June 3, 2010

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

Petitioner Kenneth Butler ("Petitioner" or "Butler"), an inmate presently confined at the Allenwood Low Security Correctional Institution ("LSCI Allenwood") in White Deer, Pennsylvania, commenced the instant action *pro se* by filing a Petition for Writ of Habeas Corpus ("Petition") under the provisions of 28 U.S.C. § 2241. (Doc. 1.) Butler alleges that he was denied due process during disciplinary proceedings that were conducted while he was an inmate at the Otisville Federal Correctional Institution ("FCI Otisville") in Otisville, New York. (*See id.*) Following those proceedings, the Disciplinary Hearing Officer ("DHO") found Butler guilty of the charges against him and imposed sanctions, including the loss of fifty-four (54)

days of good conduct time, disciplinary segregation, and the loss of visiting and commissary privileges. As relief, Butler requests the restoration of his good conduct time, reinstatement of his visiting and commissary privileges, and expungement of the incident from his disciplinary record.

Service of the Petition was directed by Order dated December 3, 2009. (Doc. 5.) On December 24, 2009, Respondent filed a Response (Doc. 6) and supporting exhibits[1] (Doc. 6-2.) On January 4, 2010, Petitioner filed a Reply. (Doc. 7.) Accordingly, the Petition is fully briefed and ripe for review.

## I. FACTUAL BACKGROUND

On November 15, 2008, while Butler was an inmate at FCI Otisville, Mr. Lincoln, Cook Supervisor, conducted a search of the "A" side cubes in the prison camp. (Doc. 6-2 at 4 ¶ 11, Incident Report; Doc. 6-2 at 12 § V, DHO Report.) While in cube number seventeen, and searching Butler's locker, Lincoln found two pairs of safety glasses, one half dozen onions, one half dozen green peppers, and a calculator without an identification number. (*See* Doc. 6-2 at 4, 12.) Lincoln also found a pair of shoes, which Butler identified as his shoes. (*See id.*) Lincoln found hidden in the

---

[1]Respondent submitted the Declaration (Doc. 6-2 at 3) of D. Weber, a Paralegal Specialist at the United States Penitentiary at Lewisburg, Pennsylvania, who has access to Bureau of Prisons' inmate records and files, and who verified that the copies attached to the Declaration of the incident report Petitioner received on November 16, 2008 (*id.* at 4-10), and the DHO's Report from Petitioner's November 24, 2008 hearing (*id.* at 11-13), are true and accurate to the best of Weber's knowledge.

shoes six yellowish pills that were wrapped in plastic, then wrapped in a paper towel, and further wrapped in more plastic. (*See id.*) The incident report prepared by Lincoln indicates that further analysis of the pills by BOP staff member Henwood indicated the presence of amphetamines. (*See id.* at 4.) In a Memorandum dated November 23, 2008, Activities Lieutenant B. Henwood provides the following account regarding the testing of the pills:

> On November 15, 2008 at approximately 2:00pm Food Service Foreman Mr. Lincoln brought to the Lieutenant's Office items he had found during a shakedown at the Camp that he thought may be drugs. Specifically 6 yellowish pill / capsule type items without any label or marking on them. These items were placed in the SIS Evidence Locker in the Lieutenant's Office until a NIK Test could be conducted on them.
>
> On November 16, 2008 at approximately 8:45am these items were removed from the SIS Locker and tested utilizing the NIK Test. The items tested positive for AMPHETAMINES.

(*See id.* at 6, Henwood Memo.)

An incident report, which charged Butler with violations of Code 113 for Possession of Narcotics Not Prescribed by Medical Staff and Code 305 for Possession of Anything Not Authorized, was delivered to Butler by Lieutenant Henwood on November 16, 2008 at 12:15 p.m. (*See id.* at 4 ¶¶ 10, 14-16.) On November 17, 2008, Butler was seen by the Unit Disciplinary Committee. (*See id.* ¶¶ 17-21.) The Committee referred the matter to the DHO. (*See id.*) Butler's disciplinary hearing took place on November 24, 2008. (*See id.* at 11.) The DHO

3

found that Butler had committed the prohibited act of Possession of Narcotics Not Prescribed by Medical Staff, in violation of Code 113, and sanctioned Butler to a disallowance of fifty-four (54) days of good conduct time, thirty (30) days of disciplinary segregation, eighteen (18) months loss of commissary privileges, eighteen (18) months loss of visiting privileges, and eighteen (18) months Immediate Family Only Visiting to commence upon completion of the previous sanctions. (*See id.* at 12-13, §§ IV-VI.)

The DHO also found that Butler had committed the prohibited act of Possession of Anything Not Authorized, in violation of Code 305, and sanctioned him to "15 Days Disciplinary Segregation - Suspended Pending 180 Days Clear Conduct." (*See id.* at 13 § VI.) The DHO provided the following explanation of his findings:

> Specific evidence relied on to support this finding is the incident report written by Mr. Lincoln, Cook Supervisor. He states that on November 18, 2008, at approximately 1:30 p.m., he conducted a random search of your Cube, #17. In your locker, he discovered two pairs of safety glasses, a half dozen onions, a half dozen peppers and a calculator without any identification number. He also discovered six yellowish pills wrapped in plastic and paper towels. These pills were found in your shoes. In his memorandum, Acting Lt. Henwood stated he tested the pills and they were positive for Amphetamines. You offered the following as your defense: The incident report is not true. I was in my cube and Mr. Lincoln came down. I would have to get rid of it if it was mine. Mr. Lincoln was always telling me I was next to go from the Camp. I had three green peppers, a calculator and sunglasses from my job. The DHO asked if Mr. Lincoln asked if they were your boots. You said he asked what side of the cube you kept your boots on and you told him the left side. The DHO asked if that was the side the boots were with the pills in

4

>them. You said it was. When asked, you said you received the peppers from another inmate to hold.
>
>Based on the incident report, your statement and supporting documentation, the DHO has given greater weight to the written report from staff. You admitted you possessed the peppers you received from another inmate. You also admitted the boots he searched were yours. Inmates are responsible for all contraband found in their cells and property. The DHO finds you have committed Prohibited Act 113 - Possession of Narcotics and Code 305 - Possession of Anything Not Authorized.

(*See id.* at 12 § V.)

## II. DISCUSSION

Butler alleges that he was denied due process in the disciplinary proceedings that were conducted at FCI Otisville because there was insufficient evidence to support the DHO's finding that Butler was guilty of the charged offenses. (*See* Doc. 1 at 3-6.) Because Butler's sanctions included the revocation of fifty-four (54) days of good conduct time, and thus the disciplinary hearing impacted the duration of his confinement, his claim is properly before this Court in the context of a Petition filed under 28 U.S.C. § 2241.

The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Federal inmates possess a liberty interest in good conduct time. *See Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974);

*Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991).  When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive the following due process protections: **(1)** written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing; **(2)** an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals; **(3)** aid in presenting a defense if the inmate is illiterate; **(4)** an impartial tribunal; and **(5)** a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action.  *See Wolff,* 418 U.S. at 564.

In the instant case, the incident report was served on Butler on November 16, 2008, and his disciplinary hearing took place on November 24, 2008.  (*See* Doc. 6-2 at 4 ¶¶ 14-16; at 11.)  Therefore, he clearly was provided with more than twenty-four (24) hours notice of the charges against him.

Butler also was given the opportunity to call witnesses and indicated in advance of the hearing that he wished to call inmate Bernard to testify that he observed Mr Lincoln carrying items from another cell into his cell.  (*See id.* at 9, 12.)  However, Butler also was advised that the DHO would call witnesses who are determined to have information relevant to the charges.  (*See id.* at 9.)  In his Report, the DHO indicates that he denied Butler's request to call Bernard on the basis that Bernard's

6

testimony was not relevant. (*See id.* at 12.) Specifically, when the DHO asked Butler what items Bernard allegedly saw Lincoln carrying, Butler responded that Bernard would testify that he saw Lincoln carrying vegetables when he went into Butler's cell. (*See id.*) Because Butler already had admitted that he possessed peppers, the DHO determined that, even if it were true that Lincoln was carrying vegetables, "it wouldn't have an impact on this incident report." (*See id.*) Denying Butler the opportunity to call inmate Bernard as a witness does not constitute a violation of due process as it is evident that the testimony Butler wanted to elicit from Bernard was not relevant to defending the charges that he possessed the pills found by Lincoln.

Butler also was advised in advance of the hearing that he would have the opportunity to present documentary evidence, but he did not do so at the hearing. (*See id.* at 9, 12 ¶ D.) Further, Butler was afforded an opportunity to have a staff representative, and he chose to waive this right. (*See id.* at 9, 11-12.) Finally, Butler does not argue, and there is no indication from the record, that the DHO was impartial, particularly in light of the fact that the DHO provided a thorough explanation of the specific evidence he relied on in finding Butler guilty of the charges, as well as for the sanctions that were imposed. (*See id.* at 12-13.) Butler also was notified of the findings, the evidence relied on, and reasons for sanctions, and was provided with a copy of the DHO Report. (*See id.* at 13.) He also was notified of his right to appeal.

(*See id.*)  Accordingly, we find that Butler was afforded all of the due process protections required by *Wolff*.

In his Petition and Reply, Butler challenges the sufficiency of the evidence relied on by the DHO in finding that he was guilty of the charges of Possession of Narcotics Not Prescribed by Medical Staff and Possession of Anything Not Authorized.  (*See* Doc. 1 at 4-6; Doc. 7 at 1-2.)  Butler contends that there was insufficient evidence to support the DHO's findings because he based them on unreliable evidence.  (*See* Doc. 1 at 5-6; Doc. 7 at 1-2.)  Specifically, Butler alleges that the incident report is unreliable because the writer of the report failed to identify the type of testing equipment that was used to analyze the pills that were found to contain amphetamines.  (*See id*.)  Butler also argues that the DHO findings are not supported by sufficient evidence because he did not review any service record for the equipment that was used to test the pills or the qualifications of the person who performed the testing.  (*See* Doc. 1 at 6; Doc. 7 at 1-2.)

Where the due process requirements of *Wolff* are met, as is the case here, the decision of the hearing examiner will be upheld if there is "some evidence" to support the decision to revoke good time credits.  *Superintendent v. Hill,* 472 U.S. 445, 455 (1985); *see also Young,* 926 F.2d at 1402-03 (applying *Hill* standard to federal prisoner due process challenges to prison disciplinary proceedings).  The

determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455. Under *Hill,* judicial review of a prison disciplinary decision is limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support. *Id.* at 457; *see also* 28 C.F.R. § 541.17(f) (requiring that the DHO's decision be based upon at least some facts and, if there was conflicting evidence, to be based on the greater weight of the evidence).

Although he now attempts through the instant Petition to challenge the reliability of the testing that was performed to ascertain that the pills contained amphetamines, Butler made no attempt to present that challenge at the time of the hearing through his statement or through the presentation of evidence. Instead, Butler stated that the incident report was not true. Moreover, the DHO did not rely solely on the Incident Report in reaching his findings. His findings also were supported by Butler's own admissions that the boots that were searched and in which the pills were found were his, and that he possessed the peppers that he claimed he was holding for another inmate. In considering Butler's statements at the time of the incident and at the hearing, as well as the other

9

evidence, as summarized in the Factual Background section, *supra,* including the incident report written by Mr. Lincoln, and the supporting documentation, consisting of Lieutenant Henwood's Memorandum and digital photograph of the pills, glasses, and calculator, we conclude that there was "some evidence" to support the DHO's decision. As a result, we find that Butler's claim that his right to due process was violated because there was insufficient evidence to support the DHO's finding of guilt lacks merit.

### III.  CONCLUSION

Because Butler was afforded all of the due process protections required by *Wolff* and there was "some evidence" to support the DHO's findings, Butler is not entitled to habeas relief, and the Petition will be denied. An appropriate Order will enter.